NICOLL, Respondent, vs. MODERN STEEL STRUCTURAL COM-
PANY, Appellant.

*October 7—October 25, 1910.*

*Sales: Acceptance in part: Notice: Recoupment.*

Upon receipt, at Waukesha in this state, of a carload of mixed iron,
sent from Chicago upon a "rush order" and needed for imme-
diate use in its foundry, the vendee, a steel structural company,
wrote to the vendor stating that the car was very unsatisfactory
and that if they were not entirely out of material they would
certainly return it.  Two days later the vendee again wrote re-
newing the complaint and stating that the material sent was
not as promised and that a liberal allowance should be made
from the price.  The car in fact contained about forty per cent.
of foreign material, while only about five per cent. was allow-
able under the contract.  *Held,* that under the circumstances
the use by the vendee of such part of the material as conformed
to the contract did not constitute acceptance of the whole; that
the letters mentioned constituted seasonable and sufficient no-
tice that the shipment was not received as a compliance with
the contract; and hence that in an action for the contract price
the vendee was entitled to recoupment.

APPEAL from a judgment of the county court of Waukesha
county: M. S. GRISWOLD, Judge.  *Reversed.*

This action was brought to recover balance due on contract.
The established facts appear from the findings, which are as
follows:

1. That the plaintiff at all times hereinafter mentioned was
a sole trader, operating as such under the name of B. Nicoll
& Company, among other things doing a business as a scrap-
iron broker, buying and selling scrap iron, with office in the
city of Chicago, Illinois.

2. That the defendant at all times hereinafter mentioned
was a corporation ·incorporated and existing under the laws
of the state of Wisconsin, conducting a structural steel plant,
and, in conjunction therewith, a foundry.

3. That about the 18th day of October, 1907, the plaintiff and the defendant corporation made a contract in writing for the sale and delivery by the plaintiff of a carload of mixed iron at thirteen dollars and fifty cents ($13.50) per ton net, f. o. b. Waukesha, Wisconsin; that, under the terms of that agreement, the plaintiff was to ship to the defendant "one carload of mixed iron as inspected by R. T. Rolfe at buyer's plant, consisting of bolts, nuts, cast iron, malleable, plow points, horse shoes, steel, and also a small percentage of foreign material;" and that indorsed across the face of this contract are the words, "Very great rush.   Ship immediately;" said contract being plaintiff's Exhibit 1, and a copy whereof is hereto annexed and made a part hereof.

4. That in pursuance of said contract the plaintiff shipped to the defendant at Waukesha, Wisconsin, from Chicago, Illinois, a carload of scrap; that this car was delivered to the defendant at Waukesha, Wisconsin, on October 31, 1907; that on the 28th day of October, 1907, plaintiff mailed an invoice of said car to the defendant for 36,050 pounds of mixed iron at thirteen dollars and fifty cents ($13.50) per ton net, amounting to two hundred forty-three dollars and thirty-four cents ($243.34); that said carload of iron delivered to the defendant as aforesaid was purchased by the plaintiff to fill the order of the defendant from one Adolph Blonder, a scrap-iron dealer in Chicago, but of that fact defendant had no knowledge.

5. That on the 31st day of October, 1907, when the car arrived, the defendant opened said car, made an inspection of the same, and, from such inspection, learned that the quality of the contents of said car was far below the specifications required in the contract, in that said car contained a large amount of foreign material, which, after the car was entirely unloaded, was found to amount to about forty per cent. of the entire contents thereof.

6. That under the contract of sale a small percentage of foreign material, in the light of the evidence, would reasonably be about five per cent. of the entire contents.

7. That the defendant company, being entirely out of material of the kind ordered from the plaintiff and being absolutely in need of material of this kind for the operation of its

Nicoll v. Modern Steel S. Co. 143 Wis. 545.

foundry, immediately proceeded to unload and use said car of scrap in its foundry at Waukesha, and, at the same time, sent to the plaintiff the following letter:

"Waukesha, Wis., Oct. 31, 1907.

"*B. Nicoll & Co., Chicago, Ill.*    B. Nicoll & Co., Chicago.
    "Gentlemen:                      Received Nov. 1, 1907.

"We received car No. 74548 billed us on your invoice No. 6635, containing mixed iron. We are very much disappointed at the grade of iron which you have sent us in this car, as it contains nothing but tin cans, wire nails, and dirt. This is one of the most unsatisfactory cars we ever received and is of little value as malleable scrap. If we were not entirely out, we should certainly return the car.

"What we need is iron with a mixture of plow points, stove plates, and other malleable scrap.

"You now have on order another car which you expect to ship in a day or so, and we want to caution you not to send as poor a lot as this last car.

"Please advise by return mail when we may expect the next car, as this lot will only last us a very short time.

"Yours truly,

MHD                        "Modern Steel Structural Co.

"By Hopkins."

8. That on November 2d, 1907, one day after the receipt of defendant's letter of October 31st, the plaintiff wrote to the defendant the following letter:

"Chicago, November 2, 1907.

"*Modern Steel Structural Co., Waukesha, Wisconsin.*

"Gentlemen: Replying to your esteemed favor of the 31st ult., relative to carload of mixed iron, we very much regret that this material turned out so poorly, and are only sorry that you were not in a position to reject the same, as the party from whom we bought it understood fully what he was to ship. The very fact of our asking him to load the car at once convinced him that our customer was badly in need of same and took advantage of this by loading poor stuff. The next car will be inspected personally by the writer before it is loaded, and can assure you that you will get no tin cans, iron nails, or dirt in same. It is our desire to take care of our

customers, and the party who loaded this car will never sell us another pound.

"Thanking you for past courtesies, we remain, respectfully,.

"B. Nicoll & Company,

RTR MEA                                    "R. T. Rolfe."

M. S. S. Co.
Received Nov. 4, 1907.

9. That the quality and general character of the material contained in said car was manifest upon inspection and was known to the defendant when it received and inspected the car on October 31, and the defendant's agents and employees complained immediately that said material was of inferior quality; that, nevertheless, defendant, without telephoning, telegraphing, or writing, except as is shown by the letters dated October 31 and November 2, 1907, to the plaintiff to the effect that it accepted the car under protest and would expect the plaintiff to make an allowance for the depreciation in value as compared with the selling price, went right on on October 31st and unloaded said car of material and proceeded to use it because it was entirely out of material of this kind and absolutely needed the same for the operation of its foundry.

10. That, under date of November 2, 1907, the defendant wrote the following letter to the plaintiff, which letter evidently crossed the letter written by the plaintiff to the defendant of the same date:

B. Nicoll & Co., Chicago.
Received Nov. 4, 1907.

"Waukesha, Wis. Nov. 2, 1907.

"*B. Nicoll & Co., Chicago, Ill.*

"Gentlemen: The writer has been away from home for several days, and upon his return home this morning found the car of mixed scrap you sent us was received yesterday morning; had he been at home at the time this car came in not a pound of it would have been unloaded. We think you have taken an extremely unfair advantage in our dealing with you for scrap iron. Aside from the first car of scrap iron which you sent us, you have not shipped anything which met

your agreement. The last car of mixed scrap contained a great deal of dirt, not iron, but simply sand and clay. You did have in it, however, about the mixture of kinds of material we wanted, and such as your representative saw when he was here. On the car now received, it is no more like the car you saw here than it is like No. 1 machinery scrap. This car consists of nails and old spikes, almost exclusively, we doubt if there is five pounds of cast iron in the car, and as a consequence, we have to mix high priced iron with it, in order to get it to run at all. It is as much of a disappointment to us as was the last car which purported to be No. 1 machinery cast; that car instead of being good scrap, as was promised, is nothing but the cheapest kind of cast scrap you can furnish, consisting of soil pipe, burnt-out furnace bottoms, and similar useless material.

"In reference to the car of machinery scrap, we now have on order with you, if this is not exactly what you promised in every particular, we shall refuse to accept it, and in relation to the last car of mixed scrap, we want you to make us a very liberal allowance from the price charged to cover the kind of material which you have sent.

"Yours truly,

WCL                    "MODERN STEEL STRUCTURAL Co.
"By W. C. Lloyd,
"Mgr. Crane Dept."

11. That on the 21st day of February, 1908, the defendant paid the plaintiff one hundred forty-eight dollars and seventy-six cents ($148.76) for the contents of said car and on account thereof.

12. That the amount so paid, to wit, one hundred forty-eight dollars and seventy-six cents ($148.76), was all that the material in the car was worth and was the reasonable value of said car of scrap iron.

*Conclusions of law:*

1. That, under the circumstances of this case, November 2, 1907, was an unreasonable time in which to notify plaintiff of the defects in the car and was not a timely notice to the plaintiff so that he might have an opportunity to inspect said car and protect himself.

2. That the plaintiff is entitled to judgment against the de-

fendant for the sum of ninety-four dollars and fifty-eight cents ($94.58), with interest from October 31, 1907, and costs.

Judgment was entered for the plaintiff in accordance with the findings, from which this appeal was taken.

For the appellant there was a brief by *Ryan, Merton, Newbury & Jacobson,* and oral argument by *T. E. Ryan* and *M. A. Jacobson.*

For the respondent there was a brief by *Carroll & Carroll,* and oral argument by *Geo. Carroll.*

KERWIN, J.     The plaintiff contracted with the defendant for a carload of mixed iron consisting of the kind described in the contract "and also a small percentage of foreign material." . The court found that there was forty per cent. of foreign material, and that under the contract a small percentage of foreign material would be about five per cent. of the entire contents, but further held that the defendant had accepted the carload and was not entitled to any deduction from the contract price.     The question presented is whether the defendant, by accepting the shipment, waived its right to any deduction because of the foreign material.     It is without dispute that there was about forty per cent. of the carload foreign material, and that only about five per cent. was allowable under the contract, and that the defendant had paid all the carload was reasonably worth.     The question, therefore, arises whether notice was seasonably given and was sufficient to justify recoupment from the purchase price because of the forty per cent. of foreign material included and not covered by the contract.     It is quite clear that the defendant did not rescind the contract *in toto,* but accepted such part of the material as complied with the contract.     The order was a "rush" order.     The iron was necessary for immediate use, to the knowledge of plaintiff.     It would be a harsh rule that would require the defendant under the circumstances to pay for for-

eign material included in the shipment and not covered by the contract, merely because under pressing necessity it had used the portion of the material covered by the contract.    It seems, under the circumstances of the case, that the notice was sufficient to protect the defendant against claim for the foreign material.    The letter of October 31st contained complaint about the shipment, and, while it was doubtless sufficient to amount to an acceptance of the iron specified in the contract, it did not amount to an acceptance of the foreign material when read with the letter of November 2d.    The letter of November 2d, we think, was seasonably sent under the circumstances, and sufficient to show that the shipment was not received as a compliance with the contract.    Hence, in an action on the contract to recover, the court would be justified in making the proper deduction.    *Locke v. Williamson,* 40 Wis. 377; *Northern S. Co. v. Wangard,* 117 Wis. 624, 94 N. W. 785.

It follows from what has been said that the judgment of the court below must be reversed.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded with directions to render judgment for the defendant.